NICHOLAS J. STEINKE,

          Plaintiff,

v.                                                               Case No. 19-cv-1085-pp

CO PIEPER, *et al.*,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

       Plaintiff Nicholas Steinke, who is representing himself, filed a complaint alleging that the defendants violated his civil rights while he was an inmate at the Dodge Correctional Institution. Dtk. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 9, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $9.04. Dkt. No. 10. The court received that fee on August 14, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)).

To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A

2

Case 2:19-cv-01085-PP   Filed 06/16/20   Page 2 of 14   Document 13

claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

    B.    The Plaintiff's Allegations

The plaintiff alleges that on December 18, 2014, he had a seizure in his cell at the Dodge Correctional Institution. Dkt. No. 1 at 1. He says that he suffered several injuries as a result, included a bruise on his leg, a lump on his head and a cut on his arm. Id. The plaintiff says that when he "came to," he called for a corrections officer. Id. Correctional Officer Pieper responded to the plaintiff's call for help. Id. The plaintiff told Pieper about his seizure and showed Pieper his injuries. Id. at 1-2. About thirty minutes later, the plaintiff spoke with Sergeant Sloviak. Id. The plaintiff also told Sloviak about his seizure and showed him his injuries. Id. at 2. Both Pieper and Sloviak told the plaintiff they would call the Health Services Unit (HSU), but the plaintiff alleges that "hour upon hour" passed and the plaintiff received no treatment. Id. The plaintiff says that though he "repeatedly" asked both defendants when he would be seen by HSU, both ignored him. Id. The plaintiff asserts that Pieper and Sloviak conspired to deny him treatment. Id.

The plaintiff says that the next day, he reported the seizure to both corrections officers on first shift, as well as to both officers on second shift, showing them his injuries. Id. The plaintiff says that again, nothing was done and no one called the HSU. Id. The plaintiff asserts that the John Does conspired against him because they knew about his injuries and didn't do anything, leaving him in his cell in pain. Id.

The plaintiff indicates that his medical file shows that on December 18, 2014, someone—he thinks it was Carman Zacharias—logged an emergency call for his seizure. Id. The defendant alleges that Zacharias did nothing and sent no one to treat his injuries. Id. The plaintiff asserts that Zacharias conspired to deny him medical treatment, previously had done the same in response to a seizure he had on June 27, 2016 and "may be a conspirator" in a third incident on November 11, 2014. Id.

The plaintiff alleges that he wrote to the Health Services Unit numerous times, but was never seen or treated. Id. He alleges that this constitutes discrimination under the Americans with Disabilities Act as to Pieper, Sloviak, the John Does on the first and second shifts on December 19, 2014 and Carmen Zacharias, because all of them were aware of his disability and refused to accommodate it. Id.

The plaintiff says that he filed a complaint and exercised his right to due process, but that "the following all conspired by presenting facts that are fraudulent, disregarding a person's safety and medical condition, failing to provide a proper investigation, failing to treat an injured victim, not

4

interviewing [his] witnesses or allowing [him] to present evidence or be heard, violating [his] due process rights in an attempt to cover up their wrongdoings making this system virtually non-existent." Id. at 3. The people the plaintiff named following this allegation were Derosa, O'Donnell, Dittman, Beerkircher, Greer, Holzmacher (not listed on the first page as a defendant) and Patten. Id. The plaintiff does not say who any of these people are, but he alleges that all of them were aware that he was never seen or treated for his seizure or his injuries, that all of them did nothing and left him in his cell and that all of them failed to investigate. Id. He asserts that these defendants also conspired to deny him treatment and suggests that Derosa was involved in similar incidents on November 7, 2014 and December 3, 2014, and that Dittman and O'Donnell were involved in those two incidents and in another incident on June 27, 2016. Id. at 3-4.

The plaintiff says that he is suing under the Eighth Amendment, Fourteenth Amendment, deliberate indifference, cruel and unusual punishment, equal protection, conspiracy, 42 U.S.C. §1985, 42 U.S.C. §1986, 42 U.S.C. §1981, "Section H, B, C," due process, discrimination under the ADA, 42 U.S.C. §§12132 and 12182 and Chapter 26. For relief, the plaintiff seeks monetary damages. Id. at 5.

    C.    <u>Analysis</u>

        1.    *Claims under 42 U.S.C. §§1981, 1985, and 1986*

Section §1981 "prohibits racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168

(1976). The plaintiff does not allege that the defendants interfered with his right to make or enforce a contract on account of his race. In fact, he does not identify his race. The complaint fails to state a claim under §1981.

Under §1985(1)-(2), the plaintiff must identify a conspiracy to prevent an officer of the United States from discharging duties or to obstruct or intimidate a party, witness, or juror in a court of the United States. Dallas v. Hill, No. 18-C-1657, 2019 WL 403713, at *3 (E.D. Wis. Jan. 31, 2019). The plaintiff is not an officer of the United States and he does not allege any obstruction in a state court case. The complaint fails to state a claim under §1985(1)-(2).

Under §1985(3), the plaintiff must allege "first, that the defendants conspired; second, that they did so for the purpose of depriving any person or class of persons the equal protection of the laws; and third, that the plaintiff was injured by an act done in furtherance of the conspiracy." Id. (citing Hartman v. Bd. of Trustees of Community College Dist. No. 508, 4 F.3d 465, 469 (7th Cir. 1993)). Under §1986, a defendant may be liable if he or she knew that others planned to conspire to deny treatment to the plaintiff because of his disability but failed to prevent the conspiracy. See Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 820 (7th Cir. 2015). The plaintiff's claims under §§1985 and 1986 are intertwined with his claims of constitutional violations. See Ennin v. CNH Indus. Am., LLC, 878 F.3d 590, 597 (7th Cir. 2017) (citing Indianapolis Minority Contrs. Ass'n v. Wiley, 187 F.3d 743, 754 (7th Cir. 1999), and Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985)). The court will address the conspiracy claims in the section below.

6

### 2. *Claims under 42 U.S.C. §1983*

The plaintiff alleges that the defendants violated his constitutional rights; that claim arises under 42 U.S.C. §1983. "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." D.S. v. E. Porter Cty. Sch. Corp, 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan-Moore v. Cty. Of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The plaintiff mentions the Eighth Amendment, deliberate indifference and cruel and unusual punishment. The Eighth Amendment prohibits cruel and unusual punishment, and deliberate indifference is a form of cruel and unusual punishment. The plaintiff also mentions the Fourteenth Amendment and due process; the Fourteenth Amendment is one of the amendments that guarantees due process. The plaintiff also mentions equal protection, which is guaranteed by the Fourteenth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. To state a claim under the Eighth Amendment, the plaintiff must allege that he had an objectively serious medical condition and that the prison officials were deliberately indifferent to the condition. Farmer v. Brennan, 511 U.S. 825, 837 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Id. Neither negligence nor medical malpractice amount to a constitutional violation. Id. at 835-36; Estelle v. Gamble, 429 U.S. 97, 106 (1976).

7

The plaintiff states that he told Pieper, Sloviak and John Doe COs on the December 19 first and second shifts that he had a seizure disorder and various painful injuries. He states that they refused to provide him with treatment for it. The plaintiff states that Zacharias knew about the plaintiff's need for medical care and refused to send someone to treatment him. These allegations are sufficient to state an Eighth Amendment deliberate indifference claim against Pieper, Sloviak, Zacharias and the John Doe COs regarding the December 18-19 incidents.

The court notes that the plaintiff mentions incidents from November 7, 2014 and June 27, 2016. The court addressed the facts and claims related to the November 7, 2014 seizure in Case No. 17-cv-653-pp. The court addressed the facts and claims related to the June 27, 2016 seizure in Case No. 17-cv-656-pp. The plaintiff cannot proceed with those facts and claims in this lawsuit.

The plaintiff states that Derosa, O'Donnell, Dittman, Beerkircher, Greer, and Patten knew about his seizures and injuries and failed to properly investigate his inmate grievances. Prisoners have no constitutional right to an investigation of their grievances, see George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007), or to compel police or others to investigate a general concern, see Dickens v. Illinois, 753 F. App'x 390, 392 (7th Cir. 2018) (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). The plaintiff also says that these defendants presented false facts, didn't allow him a hearing or allow him to present witnesses and covered up their wrongdoings. The plaintiff does not

8

identify these defendants—are they complaint examiners? Hearing examiners? Witnesses? He does not describe what authority these defendants had to investigate or hold hearings or anything else. The court will dismiss Derosa, O'Donnell, Dittman, Beerkircher, Greer and Patten from the case.

The plaintiff states that all the defendants violated his right to "equal protection" and that they all "conspired" against him. See Dkt. No. 1 at 4, 5. "Disabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment." Stevens v. Ill. Dept. of Transp., 210 F.3d 732, 737 (7th Cir. 2000). To state an equal protection claim, a plaintiff "must establish that a defendant acted with a discriminatory purpose and discriminated against [him] because of [his] membership in an identifiable group." Wileman v. Sch. Dist. of Janesville, No. 17-cv-531-jdp, 2018 WL 1401261, at *3 (W.D. Wis. Mar. 19, 2018). The court will assume that having a seizure disorder placed the defendant in the protected class of disabled individuals. But the plaintiff has not alleged any facts showing how he was treated differently from others who were similarly situated. His conclusory allegations that he was discriminated against are not sufficient to state a claim.

Similarly, "[v]ague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's [pleading] burden[.]" Evers v. Reak, 21 F. App'x 447, 450 (7th Cir. 2001). To state a conspiracy claim, the plaintiff must allege that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. Id. (citing Scherer v. Balkema, 840 F.2d 437, 441

9

(7th Cir. 1988)). "[A] complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds." Id. The plaintiff must "allege the 'what, when, why, and how' of the defendants' supposed agreement to deprive him of his constitutional rights." Id. (quoting Brokaw v. Mercer Cty., 235 F.3d 1000, 1016 (7th Cir. 2000)).

The plaintiff repeatedly alleges that the defendants all were aware of his seizure disorder and injuries, and he uses the word "conspiracy" over and over. But using the word "conspiracy" is not enough; the plaintiff must allege specific facts about who agreed with whom, what they agreed to do, when they agreed to do it, why they did so and how. While the plaintiff's allegations suggest that some individuals at Dodge may have independently showed deliberate indifference toward his medical condition, they do not suffice to show that all the defendants had a "meeting of the minds" to deprive him of his constitutional rights. The plaintiff appears to suggest that the sheer number of defendants who allegedly were deliberately indifferent to his medical needs shows that there must have been an agreement among them. Again, such conclusory allegations are not sufficient to state a claim for conspiracy.

       3.    *Claims under the Americans with Disabilities Act*

The plaintiff alleges that the defendants violated the ADA, 42 U.S.C. §12101, *et seq.* The plaintiff mentions 42 U.S.C. §12132, the section of the ADA that says that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to

10

discrimination by any such entity."[1] He also mentions Chapter 126—the ADA is Chapter 126 of Title 42.[2]

"Public entities, such as correctional facilities, must 'take reasonable measures to remove architectural and other barriers'" that deny individuals access to public services. Clemons v. Dart, 168 F. Supp. 3d 1060, 1065–66 (N.D. Ill. 2016) (quoting Tennessee v. Lane, 541 U.S. 509, 531(2004)). To state a claim under the ADA, the plaintiff must allege that (1) he is a "qualified individual with a disability;" (2) that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and (3) that the denial or discrimination was "by reason of his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (quoting Love v. Westville Corr. Ctr., 103 F.3d 558, 560 (7th Cir.1996)).

A qualified individual must have a disability which the Act defines as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). A major life activity includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Hamm v. Runyon, 51 F.3d 721, 724 (7th Cir.1995). A qualified individual must allege that he was

---

[1] The plaintiff also mentions 42 U.S.C. §12182, which prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodates of any place of public accommodation by any person wo owns, leases (or leases to), or operates a place of public accommodation." This provision is not relevant to the plaintiff's claims in this lawsuit.

[2] The plaintiff also refers to Sections H (or A), B and C. The court suspects the plaintiff is referring to some portion of the ADA.

11

"excluded from or denied access to" any prison service, program or activity. Doyle v. Fairman, No. 96 C 2572, 1997 WL 610332, at *5 (N.D. Ill. Sept. 29, 1997). "The ADA does not provide a remedy for inconvenience." Id. (citing Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir.1996)).

The plaintiff's seizure disorder is a qualified disability under the ADA. Lewis v. Truitt, 960 F. Supp. 175, 178 (S.D. Ind. 1997) ("For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in the recognition of and aid of seizures."). But the plaintiff has not alleged that the Department of Corrections denied him the "benefits of the services, programs, or activities of a public entity" due to his seizure disorder. To the contrary, the plaintiff alleges that Dodge Correctional Institution had medical care options available for him but that specific individuals refused to comply with their duty to provide such medical care. Jaros v. Ill. Dept. of Corr., 684 F.3d 667, 670 (7th Cir. 2012) ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."); see also Boston v. Dart, No. 14 CV 8680, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (noting that the ADA only allows official capacity claims involving the entire public entity, not individual capacity claims against specific

people). The court will not allow the plaintiff to proceed with claims under the ADA.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4. The plaintiff shall pay the **$340.96** balance of the filing fee over time as he is able.

The court **ORDERS** that defendants Dittman, Derosa, Beerkircher, O'Donnell, Greer and Patten are **DISMISSED** from this case.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Pieper, Sloviak and Zacharias. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

Because the plaintiff has sued John Does, he will need to use discovery to learn their names. After the named defendants have an opportunity to respond to the complaint, and after the court sets deadlines for the completion of discovery and the filing of dispositive motions, the plaintiff may serve discovery requests on the named defendants to learn the Doe defendants' names. Once he learns their names, he must file a motion to substitute their names for the Doe placeholders.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 16th day of June, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**